IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| **JAMES ALLAN BREIT JR.,** individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**GBR PIZZA, INC. d/b/a "DOMINO'S PIZZA"** and **GERALD B. RHODES,**<br><br>Defendants. | **Case No.**<br><br>**Jury Demanded** |

## COMPLAINT FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT & NORTH CAROLINA MINIMUM WAGE LAW

Plaintiff James Allen Breit Jr. ("Plaintiff"), individually and on behalf of all other similarly situated delivery drivers, brings this Class and Collective Action Complaint against GBR Pizza, Inc. and Gerald B. Rhodes (collectively "Defendants"), and alleges as follows:

1. Defendants operate numerous Domino's Pizza franchise stores. Defendants employ delivery drivers who use their own automobiles to deliver pizzas and other food items to Defendants' customers. However, instead of reimbursing delivery drivers for the reasonably approximate costs of the business use of their vehicles, Defendants use a flawed method to determine reimbursement rates that provides such an unreasonably low rate beneath any appropriate approximation of the expenses they incur that the drivers' unreimbursed expenses cause their wages to fall below the federal and state minimum wage during some or all workweeks.

2. Plaintiff brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* and as a class action under the North Carolina Wage and Hour

1

Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq.*, to recover unpaid minimum wages owed to Plaintiff and similarly situated delivery drivers employed by Defendants at their Domino's Pizza stores.

**Jurisdiction and Venue**

3. The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

4. Venue in this District is proper under 28 U.S.C. § 1391 because Defendants operate Domino's Pizza franchise stores in this District, Defendants established their pay and reimbursement policies in this District, and a substantial part of the events giving rise to the claims herein occurred within this District.

**Parties**

5. Defendant, GBR Pizza, Inc. is authorized to conduct business and is conducting business in North Carolina. GBR Pizza, Inc. may be served via its registered agent Gerald B. Rhodes at 1600 South Horner Boulevard, Sanford, NC 27330, or wherever he may be found.

6. Defendant Gerald B. Rhodes is individually liable because, during the relevant times, he was an owner of substantial interests in Defendant GBR Pizza, Inc., served as an officer of the entity, and held managerial responsibilities and substantial control over the terms and conditions of drivers' work as he held the power to hire and fire, supervised and controlled work schedules and/or conditions of employment, determined rates and methods of pay and/or expense reimbursements, and maintained employment records and/or held control over employment

records. Defendant may be served at 1600 South Horner Boulevard, Sanford, NC 27330, or wherever he may be found.

7. Plaintiff has been employed as a delivery driver at one of Defendants' Domino's Pizza stores located at 3254 Ray Road, Spring Lake, NC 28390 from August 1st, 2016 to the present day. Plaintiff's consent to pursue this claim under the FLSA is attached to this Original Complaint as "Exhibit 1."

**General Allegations**

*Defendants' Business*

8. Defendants own and operate numerous Domino's Pizza franchise stores, including stores within this District and this Division.

9. Gerald B. Rhodes is an owner, officer, and director of GBR Pizza, Inc.

10. In this capacity, Gerald B. Rhodes implemented and oversaw the corporate Defendant's pay practices, and is therefore individually liable for the violations at issue.

11. Defendants' Domino's Pizza stores employ delivery drivers who all have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces.

*Defendants' Flawed Automobile Reimbursement Policy*

12. Defendants require their delivery drivers to maintain and pay for safe, legally-operable, and insured automobiles when delivering pizza and other food items.

13. Defendants' delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering pizzas and other food items for the primary benefit of Defendants.

14. Defendants' delivery driver reimbursement policy reimburses drivers on a per-mile basis, but the per-mile reimbursement equates to below the IRS business mileage reimbursement rate

or any other reasonable approximation of the cost to own and operate a motor vehicle. This policy applies to all of Defendants' delivery drivers.

15. The result of Defendants' delivery driver reimbursement policy is a reimbursement of much less than a reasonable approximation of delivery drivers' automobile expenses.

16. During the applicable FLSA limitations period, the IRS business mileage reimbursement rate ranged between $.535 and $.575 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranges between $.571 and $.608 per mile during the applicable period for drivers who drive 15,000 miles per year. These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for business use.

17. However, the driving conditions associated with the pizza delivery business cause even more frequent and higher maintenance costs and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Defendants' delivery drivers experience lower gas mileage and higher repair costs than the average driver used in the above calculations. The nature of the delivery business includes frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

18. Defendants' reimbursement policy does not reimburse delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, and thus Defendants uniformly fail to reimburse delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendants' benefit.

19. Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants such that the hourly wages paid to Plaintiff and Defendants' other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

20. Defendants fail to reasonably approximate the amount of their drivers' automobile expenses to such an extent that their drivers' net wages are diminished beneath minimum wage requirements.

21. In sum, Defendants' reimbursement policy fails to reflect the realities of delivery drivers' automobile expenses.

### *Defendants' Failure to Reasonably Reimburse Automobile Expenses Causes Minimum Wage Violations*

22. Regardless of the precise amount of the per-mile reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of minimum wage requirements.

23. Plaintiff was paid $6.00 per hour while out for delivery, including a tip credit applicable to the time he performed deliveries.

24. The federal minimum wage has been $7.25 per hour since July 24, 2009.

25. While out for delivery, Plaintiff was reimbursed just $0.19 per mile.

26. During the relevant time period, the IRS business mileage reimbursement rate ranged between $.56 and $.535 per mile, which reasonably approximated the automobile expenses incurred while delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the lowest IRS rate per mile driven in effect during that period as a reasonable

approximation of Plaintiff's automobile expenses, every mile driven on the job decreased Plaintiff's net wages by at least $0.345 per mile ($.535 – $0.19).

27. Plaintiff regularly made at least 2 deliveries per hour. Plaintiff's average round trip delivery distance was approximately 8 miles. Therefore, Plaintiff averaged about 16 miles per hour working as a delivery driver.

28. Thus, given the discrepancy between the IRS minimum and the reimbursement Plaintiff actually received, every hour spent taking deliveries decreased Plaintiff's net wages by at least $5.52 ($0.345 net wage decrease x 16 miles driven per hour), resulting in a net hourly wage rate of approximately $0.48 ($6.00 hourly delivery wage – $5.52 per hour "kickback" to Defendants).

29. All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

30. Because Defendants paid their drivers a gross hourly wage below minimum wage and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

31. While the amount of Defendants' actual reimbursements per mile may vary over time, Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of their other stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

32. Defendants' low reimbursement rates were a frequent complaint of Defendants' delivery drivers, yet Defendants continued to reimburse at a rate much less than any reasonable approximation of delivery drivers' automobile expenses.

33. The net effect of Defendants' flawed reimbursement policy is that Defendants have willfully failed to pay minimum wage to their delivery drivers. Defendants thereby enjoy ill-gained profits at the expense of their employees.

## Class and Collective Action Allegations

34. Plaintiff brings this FLSA claim as an "opt-in" collective action on behalf of similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b).

35. The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

36. Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging Defendants' practice of failing to pay employees the federal minimum wage. The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential class members may be notified of the pendency of this action via mail and electronic means.

37. Plaintiff and all of Defendants' delivery drivers are similarly situated in that:

   a. They have worked as delivery drivers for Defendants delivering pizzas and other food items to Defendants' customers;

   b. They have delivered pizzas and other food items using automobiles not owned or maintained by Defendants;

   c. Defendants required them to maintain these automobiles in a safe, legally-operable, and insured condition;

d. They incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of Defendants;

e. They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. They were subject to the same pay policies and practices of Defendants;

i. They were subject to the same delivery driver reimbursement policy, which underestimates automobile expenses per mile, and thereby systematically deprived employees of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

g. They were reimbursed similar set amounts of automobile expenses per delivery; and

i. They were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

38. Plaintiff brings Count II as a class action pursuant to Fed. R. Civ. P. 23, individually and as the Class Representative of the following persons (the "Class"):

> All current and former delivery drivers employed by Defendants since the date three years preceding the filing of this Complaint.

39. The state law claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

40. The Class satisfies the numerosity standard as it consists of hundreds of persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

41. Questions of fact and law common to the Class predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' actions include, without limitation:

   a. Whether Defendants failed to pay Class members the minimum wage required by North Carolina law;

   b. Whether Defendants failed to reasonably reimburse Class members for using their own vehicles to deliver Defendants' pizzas and other food items;

   c. Whether Defendants' formula and / or methodology used to calculate the payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the Class members;

   d. Whether Defendants failed to keep accurate records of deductions from Class members' wages in violation of North Carolina law; and

   e. Whether Defendants failed to reimburse Plaintiff and the Putative Plaintiffs for "other amounts promised" pursuant to its company handbook, and thus required by the NCWHA.

42. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

43. Plaintiff's claim is typical of those of the Class in that:

   a. Plaintiff and the Class have worked as delivery drivers for Defendants delivering pizzas and other food items to Defendants' customers;

   b. Plaintiff and the Class delivered pizzas and other food items using automobiles not owned or maintained by Defendants;

c. Defendants required Plaintiff and the Class to maintain these automobiles in a safe, legally-operable, and insured condition;

d. Plaintiff and the Class incurred costs for automobile expenses while delivering pizzas and other food items for the primary benefit of Defendants;

e. Plaintiff and the Class were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. Plaintiff and the Class were subject to the same pay policies and practices of Defendants;

g. Plaintiff and the Class were subject to the same delivery driver reimbursement policy that underestimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the North Carolina minimum wage in some or all workweeks;

h. Plaintiff and the Class were reimbursed similar set amounts of automobile expenses per delivery; and

i. Plaintiff and the Class were paid at or near North Carolina minimum wage before deducting unreimbursed business expenses.

44. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Class.

45. Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the members of the Class he seeks to represent. The interests of the members of the Class will be fairly and adequately protected by

Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

46. Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Class, and there are no material difficulties impairing the management of a class action.

47. It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

### Count I:  Violation of the Fair Labor Standards Act of 1938

48. Plaintiff reasserts and re-alleges the allegations set forth above.

49. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

50. Defendants are subject to the FLSA's minimum wage requirements as an enterprise engaged in interstate commerce, and its employees are engaged in commerce.

51. At all relevant times herein, Plaintiff and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

11

Case 5:19-cv-00257-D    Document 1    Filed 06/21/19    Page 11 of 15

52. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

53. Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

54. As alleged herein, Defendants have reimbursed delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes these employees' wages beneath the federal minimum wage.

55. Defendants knew or should have known that their pay and reimbursement policies, practices, and methodology result in failure to compensate delivery drivers at the federal minimum wage.

56. Defendants, pursuant to their policy, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated employees.

57. Plaintiff and all similarly situated delivery drivers are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendants' Domino's Pizza stores.

58. Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for whether, their conduct was unlawful.

59. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants are not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

60. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount of liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## Count II: Violation of the North Carolina Wage and Hour Act

61. Plaintiff reasserts and re-alleges the allegations set forth above.

62. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, Defendants were required to pay Plaintiff and the Putative Plaintiffs all wages, when due, for all hours of work at hourly rates which exceeded the minimum wage rate under the FLSA on their regular pay date.

63. Defendants were required to provide employees with advanced notice for wage deductions permissible by and in compliance with the NCWHA.

64. Defendants failed to pay Plaintiff and the Putative Plaintiffs reimbursements for travel expenses "as other amounts promised" under the NCWHA and thus failed to comply with this statute and its accompanying administrative code.

65. The foregoing conduct, as alleged, constitutes willful violations of the NCWHA, N.C. Gen. State. §§ 95-25.6, 95-25.7, 95-25.8, and 95-25.13.

66. As set forth above, the Plaintiff and the Putative Plaintiffs have sustained losses and lost compensation as a proximate result of Defendants' violations. Accordingly, Plaintiff on behalf of himself and the Putative Plaintiffs, seeks damages in the amount of their unpaid earned compensation, liquidated damages, plus interest at the legal rate set forth in N.C. Gen. Stat. § 24-1 from the date each amount came due as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a) and (a1).

67. Plaintiff, on behalf of himself and the Putative Plaintiffs, seeks recovery of his attorneys' fees as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand judgment against Defendants and pray for: (1) compensatory damages; (2) liquidated damages, (3) costs of litigation and attorneys' fees as provided by law; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Demand for Jury Trial

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Respectfully submitted,

/s/ Jacob J. Modla
Jacob J. Modla ( Bar No: 17534)
The Law Offices of Jason E. Taylor P.C.
454 S. Anderson Rd., Suite 303
Rock Hill, SC 29730
Telephone: 803-328-0898
E-Mail: jmodla@jasonetaylor.com

/s/ Jay Forester

Jay Forester*, Texas Bar No. 24087532
**FORESTER HAYNIE PLLC**
1701 N. Market Street, Suite 210
Dallas, Texas 75202
(214) 210-2100 phone
(214) 346-5909 fax
Email: jay@foresterhaynie.com
**pro hac vice* forthcoming